UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNMARIE FIVECOAT,

    Plaintiff,

v.   CASE NO. 8:15-CV-0703-T-24MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ improperly discounted the opinions of her treating physician; posed an incomplete hypothetical to the vocational expert (VE); did not consider the combined effect of her impairments; erroneously discounted her credibility; did not specify the weight assigned to certain medical evidence; and substituted her opinion for that of the medical experts. Plaintiff also faults the Appeals Council (AC) for failing to consider what she believes to be new and material evidence from two treating sources. After considering the parties' briefs (docs. 9, 10) and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    A.    *Background*

    Plaintiff Annmarie Fivecoat was born on December 15, 1963, and has a high school education and some college credit. She has worked as a general manager of a golf club and a

marketing and sales director of a yacht club. Plaintiff alleges disability commencing January 1, 2008, due to multiple sclerosis (MS), Graves disease, hypertension, thyroid nodules, and vasovegal response. (R. 118) After a hearing, the ALJ found Plaintiff has the severe impairments of "multiple sclerosis (MS); right knee meniscus tear, status post arthroscopy and injections; hypertension; and anxiety." (R. 35) Aided by the testimony of a VE, the ALJ determined that Plaintiff is not disabled and has the residual functional capacity (RFC) to perform a limited range of light work. Specifically, the ALJ found:

> [T]he claimant can lift/carry about twenty pounds occasionally and ten pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. She can frequently climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. She should avoid unprotected heights. She cannot climb ladders, ropes, or scaffolds. She should avoid more than moderate exposure to extreme heat and work hazards such as dangerous moving machinery. Secondary to mental limitations, she should not have to perform any work that is fast pace or has high production goals. She would need to avoid high-speed activities.

(R. 37)

The ALJ determined that, with this RFC, Plaintiff could not perform her past relevant work but could do light work as a price marker, mailroom clerk, photocopy machine operator, and ticket taker. The ALJ also found that Plaintiff could perform sedentary work as a ticket checker and charge account clerk. (R. 46) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

   B.   *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).

The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    *C.*    *Discussion*

In January 2008, Plaintiff was diagnosed with relapsing-remitting MS, an incurable and progressive disease characterized by "periods of symptoms and signs (exacerbation) followed by a period of improvement (remission). Exacerbations vary in frequency, duration, character and severity. Remissions similarly vary in duration and in the extent of improvement." *Program Operations Manual System (POMS)* DI 24580.015, Evaluation of MS. During remission, all symptoms may disappear, or some symptoms may continue and become permanent.

The difficult question before the ALJ was whether Plaintiff's MS symptoms became disabling during the relevant time period, January 2008 (her alleged onset date and the date of her diagnosis), to December 31, 2013 (her date of last insured). Evaluating this requires the ALJ to perform a longitudinal evaluation of Plaintiff's medical history – due to the waxing and waning nature of relapsing-remitting MS, a person's ability to perform work activity during a period of remission does not establish her ability to engage in substantial work activity over time. So, while MS is not *per se* disabling, the ALJ in evaluating a claimant with MS, must consider "the frequency and duration of the exacerbations, the length of remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). The Social Security regulations emphasize that "[i]n conditions which are episodic in character, such as multiple sclerosis . . .

consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals." 20 C.F.R. Subpart P, App. 1, Section 11.00D. Consequently, "[w]hen a claimant with multiple sclerosis applies for social security benefits, it is error to focus on periods of remission from the disease to determine whether the claimant has the ability to engage in substantial gainful employment." *Jones v. Sec'y of Health and Human Servs.*, 35 F.3d 566 (6th Cir. 1994).

1. *Hypothetical Question*

Plaintiff argues the ALJ posed an incomplete hypothetical question to the VE. Based on my review of the record, I disagree. The ALJ found that Plaintiff had moderate difficulties in concentration, persistence, or pace secondary to her severe anxiety. In posing a hypothetical to the VE, however, the ALJ did not mention Plaintiff had limitations in concentration, persistence, or pace. Instead, the ALJ said Plaintiff "should not have to perform any work that is fast pace[d] or has high production goals. She would need to avoid high-speed activities." That, Plaintiff argues, is contrary to the Eleventh Circuit's opinion in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176 (11th Cir. 2011).

To backtrack, when an ALJ evaluates a claimant's mental impairments at steps two and three, she employs a special technique (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in maintaining concentration, persistence, or pace. *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). Concentration, persistence, or pace refers to the claimant's ability to sustain focused attention and concentration long enough to timely and appropriately complete tasks common in work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(C)(3). The ALJ then incorporates the results of the PRT into her findings and conclusions at steps four and five of the sequential evaluation process. *See Jacobs v. Comm'r of Soc. Sec.*, 520 F.

5

App'x 948, 950 (11th Cir. 2013). The PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180.[1]

When determining at step five whether a significant number of jobs exist in the national economy that the claimant can perform, the ALJ may rely on a VE's testimony provided the hypothetical questions encompass all of the claimant's impairments. If the ALJ presents the VE with incomplete hypothetical questions, the VE's testimony will not constitute substantial evidence. The ALJ, however, "is not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). In *Winschel*, the Eleventh Circuit found that an ALJ cannot satisfy the obligation to account for a claimant's limited ability to maintain concentration, persistence, or pace by restricting the hypothetical questions to simple, routine tasks or unskilled work. 631 F.3d at 1180. An exception is if the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite her limitations. *Id.* at 1181.

Here, the ALJ adequately accounted for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace by asking the VE a hypothetical question that included the restriction that Plaintiff is limited to unskilled, simple jobs that are not fast-paced and do not have high production goals. The ALJ expressly noted that these restrictions are "secondary to mental limitations." (R. 37) Importantly, Plaintiff does not explain how, in limiting her to slow-paced work,

---

[1] In other words, an ALJ must be more detailed in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Winschel*, 631 F.3d at 1180; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

the ALJ failed to implicitly account for her limitations in concentration, persistence, and pace. *See Lee v. Comm'r of Soc. Sec.*, 551 F. App'x 539, 541 (11th Cir. 2014). She, therefore, has not carried her burden of showing substantial evidence did not support the ALJ's determination that she could perform light work with limitations.[2] Additionally, the medical evidence bears out that Plaintiff can perform simple tasks. The ALJ relied in part on treating neurologist Steven Cohen, M.D.'s September 2010 note that Plaintiff is "neurologically normal . . . I encouraged her that all likelihood she'll continue to do extremely well for the rest of her life because of the treatments we have available and that she should continue to remain as active as possible." (R. 383) Although this comment speaks to Plaintiff's MS symptoms – not specifically to her anxiety – it is clear that in 2010 her treating neurologist believed she would thrive for a long time to come. This medical evidence (in addition to treatment records discussed elsewhere in this report and recommendation) supports the conclusion that Plaintiff can perform simple tasks despite her limitations.

    2.  *Combination of Impairments*

Plaintiff's next point is that the ALJ failed to incorporate limitations related to her fatigue, ocular migraines, and neurogenic bladder (all MS symptoms). Plaintiff is correct that at steps two and three, the regulations demand the ALJ consider not just the disabling effect of each impairment but also the combined effect of all the impairments. *See* 20 C.F.R. § 404.1523; *Davis v. Halala,* 985 F.2d 528, 534 (11th Cir. 1993) (ALJ is to evaluate the "whole person"). Where a claimant has alleged several impairments, the Commissioner has a duty to consider the impairments in

---

[2] Plaintiff argues that SSR 85-15 supports her argument that the ALJ's hypothetical questions did not account for her limitation in concentration, persistence, and pace. That ruling, however, applies only to "cases involving the evaluation of solely nonexertional impairments." SSR 85-15.

combination and to determine whether the combined impairments render the claimant disabled. *See Jones v. Dep't of Health and Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991). Indeed, the Eleventh Circuit has repeatedly stated that an ALJ has the duty to consider the Plaintiff's physical and mental impairments in combination. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). The ALJ must make specific and well-articulated findings to determine whether the claimant's particular combination of impairments are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001(11th Cir. 1987).

The ALJ stated, "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments . . . ." (R. 36) The ALJ specifically considered Plaintiff's migraines, fatigue, and neurogenic bladder in reaching this conclusion and in assessing Plaintiff's RFC. Regarding her fatigue in particular (a well known MS symptom), the ALJ wrote: "She is very active with a personal trainer and works out, to her credit. Her activity level is generally not seen in a person alleging debilitating problems. Although she has complained of fatigue, the record evidence indicates she is quite functional." (R. 43) I agree. Plaintiff testified she can only do short bursts of activity before she has to lay down for a nap and that she quit her last job because she could not endure long hours. According to Plaintiff, a typical day for her involves waking up between six and eight in the morning, attempting to read the newspaper, doing household chores or running errands, and then napping. Plaintiff cooks simple meals for herself and her husband, does some light cleaning, and even travels three to four times a year with her husband (who travels for work). She also works out at the gym several times a week. (R. 55-94) In fact, in September 2013, Plaintiff's physical therapist characterized her activities of daily living as

unrestricted. (R. 574)

The ALJ discussed Plaintiff's fatigue as a symptom of her MS and found it not to be a severe impairment. Substantial medical evidence supports this decision. Nancy Dalos, M.D., one of Plaintiff's treating neurologist, diagnosed Plaintiff's MS in August 2009, "with recent mild exacerbation, symptomatic with mild fatigue . . ." Plaintiff saw Dr. Dalos for follow-up appointments in November 2009 and April 2010. The neurologist wrote then, "since her last evaluation, she continues to feel well with a low-level of fatigability... Overall she is feeling well and her energy level seems stable." (R. 471, 475) In August 2010, she began treating with Dr. Franklin, who observed then and in November of that year that she was "very active with workouts and follows reflexology." (R. 464, 466) She was still doing "amazingly well" at her follow up appointment in May 2011. (R. 410) In October 2011, Plaintiff was treating with Dr. Cohen. He noted she had done very well in the past year with no new MS symptoms. In fact, she was "very active, going to the gym several times per week, working with a personal trainer, and also working in her garden." (R. 404) He continued: "I told her about other available treatments but because she is so stable there is no need to change treatment." (R. 405) In May 2012, Plaintiff visited Dr. Franklin before she went on a trip to Yellowstone National Park with her husband. Dr. Franklin authorized a three day treatment with Solu-Medrol, an intravenous steroid treatment designed to combat fatigue. Afterwards, she was "doing much better, less fatigued, less problems with vertigo and disequilibrium." (R. 508)

During an August 2012 visit with Dr. Evans, the physician reported that Plaintiff's MS was stable, and she was "able to do usual activities, good exercise tolerance, good general state of health, no fatigue, no fever, no weakness, and no weight loss or gain." (R. 497) At a follow-up appointment

six months later, Dr. Evan wrote that Plaintiff "has MS and she is doing fine, the least of her problems. Just an annoyance . . . overall doing well." (R. 555) In May and again in August 2013, Dr. Franklin treated Plaintiff and recorded that "for the most part, [Plaintiff] has not had any serious problems since a minor exacerbation in early May of 2012. . . . MS has been relatively well controlled." (R. 537) Plaintiff reported increased fatigue during her August 2013 appointment. The ALJ discussed this evidence of Plaintiff's fatigue and took it into account when assessing her RFC. *See Hamilton v. Astrue*, No. 4:11-CV-713-RWS, 2012 WL 3065530, at *21 (E.D. Mo. July 5, 2012) (R&R recommending district judge affirm ALJ's conclusion that claimant with MS is not disabled; finding ALJ considered fatigue when assessing RFC), *adopted at* 2012 WL 3063898 (E.D. Mo. July 27, 2012); *Morin v. Astrue*, Civ. No. 10-cv-159-JL, 2011 WL 2200758, at *9 (D. N.H. June 6, 2011) (ALJ appropriately considered fatigue in finding MS claimant not disabled).

The ALJ also considered Plaintiff's ocular migraines in assessing her RFC, noting Plaintiff's testimony that "[s]he has headaches several times a day, if not daily, maybe 4-5 times a week." (R. 38) Ocular migraines are a common symptom of MS, and Plaintiff testified that when she gets a migraine, it is difficult for her to see and she needs to lie down. But, as the ALJ noted, Plaintiff received only conservative treatment for her headaches, and her active lifestyle does not paint the picture of someone with debilitating migraines. Although Dr. Franklin noted that her migraines were most likely associated with Plaintiff's MS (R. 558), her treating opthamologist, Dr. Mendelblatt, found no evidence of the demyelinating process related to vision and noted that her vision was relatively good. (R. 522) Overall, there is little medical evidence of limitations Plaintiff suffers as a result of her migraines. *See Bond v. Colvin*, No. CV-14-00168-N-REB, 2015 WL 5634460, at *6-7 (D. Id. Sept. 24, 2015) (ALJ did not err in his assessment of claimant's ocular migraines as non-

severe because there was no evidence of significant work-related limitations due to them). In a March 2013 treatment note, Dr. Franklin noted, "[f]rom time to time, she has an ocular migraine or visual auras, but nothing of any significant note or particularly bothersome." (R. 537) Thus, the ALJ did not err in her consideration of Plaintiff's migraines.

Plaintiff also suffers from a neurogenic bladder, an impairment the ALJ concluded "does not cause more than a slight work-related limitation." (R. 35) Her bladder issues "can be accommodated within customary regularly scheduled breaks and customary tolerance for restroom breaks in the workplace." (R. 35-36) The ALJ took into account that Plaintiff wears liners, takes medication for her bladder issue, and has to urinate frequently. But in 2008, Plaintiff saw a specialist, Kenneth Bryant, M.D., for her urinary incontinence and reported "her symptoms are well controlled with Detrol 4 mg. p.o. daily. She is pleased with the results and she reports no side effects from the Detrol and has sensation of complete emptying." (R. 360) Plaintiff declined a bladder transplant. Overall, the ALJ considered Plaintiff's impairments in combination in over nine pages. Plaintiff's argument to the contrary fails.

    3.  *Treating Physician's Opinion*

Plaintiff contends the ALJ erred in discounting treating neurologist Dr. Franklin's August 2013 RFC questionnaire in which he stated Plaintiff could not work. Specifically, Dr. Franklin opined that Plaintiff was unable to sustain even a low stress job and that she would miss work more than four days per month due to her MS. He indicated Plaintiff could sit for one hour at a time (and for a total of four hours per day), stand for 20 minutes (two hours total per day), and walk one to two blocks. (R. 545) The ALJ assigned little weight to this assessment, characterizing it as "overly sympathetic" to Plaintiff and inconsistent with Dr. Franklin's treatment notes. (R. 44)

11

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id.*; *see also* 20 C.F.R. § 404.1574(a)(1-2). Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialists physicians. 20 C.F.R. § 404.1574(d)(1),(2),(5).

After reviewing the medical evidence, I agree that Dr. Franklin's restrictive RFC evaluation is a surprise considering the overall positive tone of his treatment notes as well as those of other

treating sources. Despite Plaintiff's contrary suggestion, the ALJ did not parse together positive comments from Dr. Franklin or consider his statements about Plaintiff's limitations out of context. The ALJ had good cause to reject Dr. Franklin's RFC assessment.[3]

Here is an sampling of praise for Plaintiff's active lifestyle and treatment success, taken from the medical evidence: In August 2010, during Plaintiff's first appointment with Dr. Franklin, he noted that Plaintiff is very active and that there is "nothing to suggest worsening disability or new relapses" (R. 466); a month later, in September 2010, neurologist Dr. Cohen wrote, "[i]n all likelihood she'll continue to do extremely well for the rest of her life" (R. 385); in May 2011, Dr. Franklin was "impressed" by how well Plaintiff was doing (R. 410); in October 2011, she reported to audiologist Dr. Morrow that she was "not feeling tired or poorly, no dizziness, no memory lapses or loss, no numbness" (R. 450-51); that same month, Dr. Cohen noted that Plaintiff had "done very well this year – no new symptomology attributable to MS. Very active. . . . She is doing very well neurologically" and "in all likelihood this will continue" (R. 381); in March 2012, Plaintiff told Dr. Franklin she can "deal with the fatigue, neurogenic bladder, and hearing loss" (R. 490); in April 2012, she had "excellent rehab potential" (R. 517); in August 2012, she was working out and "feeling fine" (R. 507); in October 2012, she told Dr. Evans she is "doing fine" and her MS "is the least of her problems, just an annoyance" (R. 555); in March 2013, she "for the most part, has not had any serious problems [related to MS] since a minor exacerbation in early May of 2012" (R. 537); a July 2013 MRI showed her MS was stable (R. 565); in August 2013 (the same month he completed his RFC assessment of Plaintiff), Dr. Franklin wrote that he "cannot blame MS for anything other

---

[3] Also, as stated above, a claimant's RFC determination is a legal question reserved for the Commissioner.

13

than [Plaintiff's] fatigue" (R. 558); and finally, in September 2013, Plaintiff's physical therapist noted she had returned to her previous level of functioning, she was back in the gym, and she had "unrestricted" activities of daily living. (R. 574)

Of course, Plaintiff's treatment providers' observations that she is doing well in general does not automatically suggest she is capable of working. *Compare Gonzalez v. Colvin*, No. 1:10-cv-138-RJS, 2013 WL 5783741, at * 6-7 (D. Utah Oct. 28, 2013) (remanding case because ALJ relied on treatment note that claimant was "doing well" and ignored both the phrase before that – "apart from the [MS]" – and the statement in the same note that she had "significant disability from her [MS]"); *and McWhorter v. Astrue*, No. ED-CV-08-01658(RZ), 2009 WL 2047639, at * 2 (C.D. Ca. July 9, 2009) (finding ALJ's decision not supported by substantial evidence because, three times in his decision, the ALJ quoted same treatment note that MS claimant was "doing very well" with no other evidence to support finding of no disability); *with Morin,* 2011 WL 2200758, at *9 (upholding ALJ's decision and finding ALJ's consideration of treatment note that Plaintiff's MS was "stable" was not taken out of context with other medical evidence); *and Lombardo v. Shalala*, No. CIV.A.93-0872, 1993 WL 273728, at * 4 (E.D. Pa. July 7, 1993) (ALJ properly discounted treating physician's letter that claimant's MS is disabling because it was inconsistent with same physician's treatment notes). In this case, however, even in light of the ups and downs an MS sufferer experiences with the disease, during the time period at issue there is ample record evidence supporting the ALJ's decision to discount Dr. Franklin's RFC assessment.

        4.     *Substituting ALJ's Judgment for that of Medical Experts*

Plaintiff's next argument is that the ALJ improperly characterized Plaintiff's MS treatment as conservative; in other words, the ALJ substituted her understanding of what constitutes standard

MS treatment for that Dr. Franklin performed.  According to Plaintiff, the ALJ found Plaintiff not disabled because she "disagreed with Plaintiff's method of treatment." (Doc. 9 at 11).  The Commissioner argues that Plaintiff overstates the extent to which the ALJ relied on Plaintiff's treatment method in finding her not disabled.

The ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence when assessing a person's RFC.  20 C.F.R. § 404.1529(a).  The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments.  20 C.F.R. § 404.1527.  But in the end, the RFC determination is reserved for the ALJ.  Consequently, the ALJ was not bound to accept all of Dr. Franklin's – or any other doctor's – findings.  *See* 20 C.F.R. § 404.1546(c).

I agree with the Commissioner: the ALJ did not overlook Dr. Franklin's findings and substitute her own conclusions in their place.  The ALJ did not find Plaintiff was capable of working just because the ALJ deemed Plaintiff's treatment course to be conservative.  More compelling to the ALJ was the evidence of Plaintiff's active lifestyle during the relevant time period and the observations of multiple treating sources that Plaintiff was successfully controlling her MS symptoms (with small changes as necessary to tweak her treatment regime).  *See Morin*, 2011 WL 2200758, at * 9 (ALJ properly considered MS claimant's active lifestyle in finding no disability).  In fact, the medical evidence is that Plaintiff had only one exacerbation of her disease during the relevant time period, in May 2012, an event Dr. Franklin himself considered "minor." (R. 537)  Therefore, Plaintiff's argument that the ALJ substituted her judgment for Dr. Franklin's is unsupportable.

       5.     *Plaintiff's Credibility*

Plaintiff argues the ALJ improperly discounted her credibility. According to her, the fact that she participates in activities of short duration on a regular basis does not discredit her testimony that her impairments are disabling. The ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but finds the claimant's credibility statements concerning the intensity, persistence and limiting effects of these symptoms to be poor." (R. 42)

The Eleventh Circuit has established a three-part "pain standard" that applies to claimants that attempt to establish a disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to her pain, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562**.**

The ALJ's credibility finding is supported by substantial evidence. The ALJ emphasized the evidence of Plaintiff's relatively active lifestyle (summarized above), her ability to travel and care for herself, treatment records indicating her symptoms were for the most part controlled during the relevant time period (also summarized above), her progress with a physical therapist, and her professional demeanor and ability to testify and concentrate during the 90 minute hearing.

Plaintiff's final point under this heading is that the ALJ improperly engaged in "sit and squirm" jurisprudence. The Eleventh Circuit condemns the use of a "sit and squirm" test. The danger in employing such a test is that the ALJ, who is not a medical expert, subjectively arrives at an index of traits which she expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied. *See Johns v. Bowen,* 821 F.2d 551, 556 (11th Cir. 1987); *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984); *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982). Yet, this reasoning must be balanced against the ALJ's prerogative in assessing the claimant's credibility. In this instance, the ALJ contrasted her observations ("claimant's presence and testimony at the hearing did not indicate any overt physical or mental limitations. The claimant was rather astute, professional in her dress and grooming . . . cooperative and rather articulate" (R. 43)) against the Plaintiff's testimony (needing to take breaks while cleaning, pacing herself on vacation, having to take multiple small loads to carry in groceries) and the medical record. Her observations mirrored what she found in the medical record. *See Norris v. Heckler,* 760 F.2d 1154, 1157 (11th Cir. 1985) (rejecting "sit and squirm" argument because ALJ did not impose his observations in lieu of a consideration of the medical evidence).

    6.  *ALJ's Weighing of the Evidence*

Plaintiff's penultimate argument is that the ALJ did not assign weight to every piece of impairment evidence when assessing her RFC. She points out that the ALJ summarized the medical records of Drs. Bryant, Dalos, Cohen, Morrow, and Eaton but "failed to state with particularity the weight assigned" to each. (Doc. 9 at 16).

The ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence when assessing a person's RFC. 20 C.F.R. § 404.1529(a). The

ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. 20 C.F.R. § 404.1527. An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence); *Goodley v. Harris,* 608 F.2d 234, 236-37 (5th Cir. 1979) (ALJ may not choose to "arbitrarily ignore" uncontroverted medical testimony). But the RFC determination is ultimately reserved for the ALJ, and the ALJ is not required to address every piece of medical evidence.

As discussed in previous sections, the ALJ reviewed the medical opinions at length. There is little record evidence to support Plaintiff's suggestion that the ALJ selectively chose favorable excerpts from the treatment records while ignoring excerpts that inferred Plaintiff's MS was disabling. To the contrary, the ALJ was supported by substantial evidence in concluding Plaintiff's objective medical reports during the relevant time period do not establish her disability. The ALJ did not ignore relevant medical evidence; Plaintiff has not shown reversible error.

7. *Remand for Consideration of New and Material Evidence*

Lastly, Plaintiff asserts that the Appeals Council ("AC") erred when it declined review of the ALJ's decision, finding that new evidence – letters from Dr. Franklin and Plaintiff's physical therapist – did not provide a basis for changing the ALJ's decision. The Commissioner argues that these letters were neither new nor material and did not compel remand.

> If a claimant submits new noncumulative and material evidence to the AC after the ALJ's decision, the AC shall consider such evidence, but only where it relates to the period on or before the date of the ALJ"s hearing decision. 20 C.F.R. § 404.970(b). "Material" evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Milano v.*

> *Bowen*, 809 F.2d 763 (11th Cir. 1987). When evidence is submitted for the first time to the AC, that new evidence becomes part of the administrative record. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). The AC considers the entire evidence, including the new, material, and chronologically relevant evidence, and will review the ALJ's decision if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §404.970(b). We review whether the new evidence renders the denial of benefits erroneous." *Ingram v. Comm. of Social Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007). "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error or law." *Keeton*, 21 F.3d at 1066.

*Smith v. Social Security Admin.*, 272 Fed.App'x 789, 800-01 (11th Cir. 2008) (*per curium*). Here, as in *Smith*, the AC considered Plaintiff's newly submitted evidence, but found the information did not provide a basis for changing the ALJ's decision. (R. 1-5) The AC specifically stated that it considered the reasons Plaintiff disagreed with the decision and the newly submitted evidence (R. 1-2). The AC declined to review the ALJ's decision because the newly submitted evidence post-dated Plaintiff's date of last insured and the ALJ's opinion, and the ALJ found that it was related to that later time period. Although the AC is required to consider new evidence, it is not required to explain its decision when denying review, as neither the regulations nor the Eleventh Circuit demands this. *See* 20 C.F.R. §§ 416.1467, 416.1470; *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014).

The first piece of "new" evidence consisted of a July 2014, one-paragraph letter from Dr. Franklin that post-dates the ALJ's decision by nine months. Dr. Franklin explains that even though his treatment notes state Plaintiff is "very active," she still has "significant trouble with fatigue." (*Id*.) He wrote that fatigue in general (not Plaintiff's fatigue specifically) "can be somewhat disabling." (*Id*). The second piece of "new" evidence is a July 2014 letter from Plaintiff's physical therapist, who describes in detail Plaintiff's strengths and weaknesses. He explains that when Plaintiff fatigues, she

19

loses focus and concentration. She can perform high level activities for a short period of time, but this period is followed by extreme fatigue. These two letters are neither new nor material. As I have explained, this is not a case where the ALJ parsed together positive comments and considered them out of context. While Dr. Franklin's and the therapist's retrospective conclusions – seven months after Plaintiff's date of last insured – may be that Plaintiff's symptoms were disabling prior to December 31, 2013, the record does not support this conclusion.

D.   *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1.   The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on June 15, 2016.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).